J-S05021-26          2026 PA Super 161

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEN SANTOS HERNANDEZ | : | |
| | : | |
| Appellant | : | No. 890 EDA 2025 |

Appeal from the Judgment of Sentence Entered March 28, 2025
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0003631-2021

BEFORE:   PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY KING, J.:                              **FILED JULY 29, 2026**

Appellant, Ken Santos Hernandez, appeals from the judgment of
sentence entered in the Delaware County Court of Common Pleas, following
his jury trial convictions for two counts of stalking, two counts of harassment,
and one count of possessing instruments of crime ("PIC").[1]   We affirm
Appellant's convictions, but vacate his sentence for harassment, which should
have merged with stalking for sentencing purposes.

The trial court set forth some of the relevant facts and procedural history
of this case as follows:

> On April 6, 2021, Appellant was charged with multiple
> counts of stalking …, harassment …, and [PIC] …, stemming
> from incidents where he sent pornographic images and
> threatening messages to the victim, Eseul Jung, via
> Facebook and Instagram.   The matter proceeded to a
> preliminary hearing [on] August 12, 2021 and all charges

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2709.1(a)(2), 2709(a)(4), and 907(a), respectively.

> were bound over to the Court of Common Pleas. On November 12, 2021, counsel for Appellant filed a motion to quash alleging the Commonwealth relied exclusively on hearsay in establishing a *prima facie* case of each charge. [The trial] court denied the motion to quash on January 13, 2022, after a hearing.

(Trial Court Opinion, dated 6/30/25, at 1).

Subsequently, after a conflict arose between Appellant and the Public Defender's office, the court appointed new counsel to represent Appellant. While represented by new counsel, Appellant filed several *pro se* motions including motions for change of counsel and for the trial court to recuse itself. Appellant again filed a motion for change of counsel, and the court appointed Dana Ingrahm, Esquire, who represented Appellant up to and during his trial. On May 22, 2023, the court conducted a hearing to address several outstanding pretrial motions. During that hearing, Appellant made various oral motions. Relevant to this appeal, Appellant made an oral "motion to quash" the PIC charge, claiming that his cell phone did not constitute an instrument of crime for purposes of the PIC statute. The court denied this motion.

Jury selection began on May 23, 2023. On that first day of trial, the victim Eseul Jung testified against Appellant. Ms. Jung testified that from 2019 through 2021, she had Facebook and Instagram social media profiles, and that Appellant was bothering her on those sites. Ms. Jung explained that Appellant contacted her via Facebook messaging and after chatting with her, suggested that he was interested in dating her. (N.T. Trial, 5/23/23, at 106-

12). After Ms. Jung told him that she was not interested, Appellant kept messaging her; Ms. Jung ignored the messages, and Appellant ceased sending messages for about a year. (*Id.* at 114-25). After that break, Appellant started messaging Ms. Jung again on Facebook and, when she blocked his account, he made a new account and messaged her again. (*Id.* at 126). Appellant contacted her on Instagram as well and would continue to make new profiles and communicate with her after she blocked him on Instagram. Ms. Jung testified that Appellant continued to send her messages including violent, threatening messages. Appellant also sent Ms. Jung pictures and videos, including nude photos of himself, a video of himself masturbating, and a video of him skateboarding at a skatepark where Ms. Jung frequented. (*Id.* at 126-56). The Commonwealth introduced fifteen exhibits of screenshot images that Ms. Jung had captured of messages that Appellant sent her. Ms. Jung testified that the messages made her feel uncomfortable and paranoid about her safety. (*Id.* at 146, 160).

> On the second day of trial, the court received notice from the Assistant District Attorney and the Bail Office that Appellant cut his GPS monitor off and absconded. He failed to appear for the remainder of trial. The trial continued *in absentia* as it was clear Appellant voluntarily absented himself from the proceedings. On May 25, [2023], the Jury returned a verdict of guilty as to two counts of stalking[, one related to Instagram contact and one related to Facebook contact]; two counts of harassment[, one related to Instagram contact and one related to Facebook contact]; and one count of [PIC]. On the same day, bail was revoked and a bench warrant was issued.
>
> Appellant remained a fugitive and was not heard from until

- 3 -

he began filing *pro se* motions in September of 2024 seeking a new trial and bail to be reinstated. On said petitions, he listed his address as Delaware County Prison, which was untrue, as he was not incarcerated in Delaware County Prison at the time. The motions were denied. In December of 2023, [the trial] court received information that Appellant was arrested in Chester County on four separate cases charging him with *inter alia* stalking, harassment, and aggravated assault. The above-captioned matter was then listed for sentencing. Prior to sentencing, Appellant filed yet another notice of appeal to Superior Court. That appeal did not even specify an order from which Appellant was purporting to appeal.

On March 28, 2025, during his sentencing hearing, Appellant refused to comply with [the trial] court's order to maintain appropriate decorum; he repeatedly spewed profanities to [the trial] court and continued to speak over the [trial court]. He was removed from court. The court imposed a sentence of 33 to 84 months on count 1: stalking (Facebook communications); 33 to 84 months consecutive on count 2: stalking (Instagram communications); 12 to 24 months, consecutive to count 1 on [count 21:] PIC; 6 to 12 months each on counts 11 and 12 (harassment) to run concurrent to one another and concurrent to counts 1, 2, and 21. …

On March 31, 2025, counsel filed a notice of appeal from the judgment of sentence and this court thereafter granted [trial counsel] permission to withdraw as counsel.[2] On April 17, 2025, Attorney Philip Bonini, III was appointed as appellate counsel and an order requiring a [Rule] 1925(b) statement was issued. On May 22, 2025, counsel submitted said [Rule] 1925 statement raising eighteen separate allegations of error.

_____

[2] After the court granted trial counsel permission to withdraw, Appellant filed a *pro se* motion for reconsideration of sentence on April 11, 2025, which the trial court denied. Notably, the trial court lacked jurisdiction to consider this motion as the notice of appeal had already been filed. *See* Pa.R.A.P. 1701(a) (explaining that except as otherwise prescribed by these rules, after appeal is taken, trial court may no longer proceed further in matter).

(Trial Court Opinion, dated 6/30/25, at 3-4) (unnecessary capitalization omitted).

Appellant raises the following nine issues on appeal:

1) Did the trial court err in failing to quash the informations against [Appellant] relative to [PIC], where the instrument at issue was a cellular phone?

2) Did the trial court err in failing to quash the duplicative charges of stalking, of which Appellant was found guilty on both counts?

3) Did the trial court err in failing to quash the duplicative charges of harassment, of which Appellant was found [guilty] on both counts?

4) Did the trial court err in failing to merge the duplicative charges of stalking for sentencing purposes?

5) Did the trial court err in failing to merge the duplicative charges of harassment for sentencing purposes?

6) Did the trial court err in failing to merge the lesser offense of harassment with stalking for sentencing purposes?

7) Did the trial court fail to reconsider the sentence, where the charges were duplicative and stemmed from the same facts and circumstances?

8) Did the trial court err in failing to provide a jury instruction to make clear that [Appellant] was accused of two separate counts of stalking, relative to use of Facebook and use of Instagram, of which both charges must be proven?

9) Did the trial court err in failing to quash the charges where hearsay was relied upon in both the preliminary hearing and the motion to quash hearing?

(Appellant's Brief at 7-8) (unnecessary capitalization omitted).

In his first issue, Appellant challenges the trial court's denial of his oral

motion to quash the charge of PIC. Specifically, Appellant claims that the trial court erred in denying his motion because the instrument of crime in question was a cell phone. Relying on this Court's decision in **Commonwealth v. Williams**, 808 A.2d 213 (Pa.Super. 2002), Appellant insists that where a cell phone is used to facilitate communications, the cell phone itself is not an instrument of crime. Appellant argues that in his case, the "cell phone is not an integral part of the underlying criminal activity, and is merely just a means to facilitate communications," especially given that both Facebook and Instagram could have been accessed from a computer instead of a cell phone. (Appellant's Brief at 20). Appellant suggests that declaring a cell phone as an instrument of crime would lead to an overly broad interpretation of the statute, such that a pen used to write a harassing letter would thereafter be considered an instrument of crime, as would the envelope and stamp used to mail the letter. Appellant insists that a cell phone, like an envelope and stamp, is merely a means to facilitate the communication, and is not, itself, an instrument of crime. Appellant concludes that the trial court erred as a matter of law in failing to dismiss the PIC charge on these grounds. For the following reasons, we disagree.

Initially, we note that the Commonwealth has suggested that we deem this issue waived. We note that Appellant first presented this issue to the trial court by making an oral motion on May 22, 2023, the day before trial, to quash the PIC charge. Under Pennsylvania Rule of Criminal Procedure 578,

requests to quash or dismiss an information must be included in the omnibus pretrial motion, which generally must be filed within 30 days after arraignment, and failure to do so may result in waiver. **See** Pa.R.Crim.P. 579(A); **Commonwealth v. Aguilar**, 340 A.3d 311, 318 (Pa.Super. 2025). However, "[a] pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case." **Commonwealth v. Dantzler**, 135 A.3d 1109, 1112 (2016) (*en banc*). Consequently, when a motion styled as a "motion to quash" challenges the sufficiency of the Commonwealth's evidence rather than facial defects in the information, courts will treat it as a petition for writ of *habeas corpus* regardless of timing or how it is captioned. **See Commonwealth v. Burkett**, 507 A.2d 1266, 1266 (Pa.Super. 1986) (stating: "Even though the appellant incorrectly styled his application as a Motion to Quash, it will be treated as a Writ of *Habeas Corpus*"). Thus, notwithstanding Appellant's phrasing of his challenge as a "motion to quash," Appellant's pre-trial complaint that his cell phone is not an instrument of crime was more akin to a petition for *habeas corpus*. **See Dantzler, supra**; **Burkett, supra**.

Further, where a defendant proceeds to trial, rather than immediately petitioning this Court for review of a denial of a petition for *habeas corpus*, any deficiency in the Commonwealth's pretrial ability to establish a *prima facie* case is not reviewable. **Commonwealth v. Wilson**, 172 A.3d 605, 610 (Pa.Super. 2017), *appeal denied*, 645 Pa. 762, 182 A.3d 997 (2018). Instead,

- 7 -

where a defendant is convicted and sentenced for an offense, the claim can be analyzed by this Court pursuant to a sufficiency standard of review. *Commonwealth v. Price*, 189 A.3d 423, 427 n.4 (Pa.Super. 2018), *appeal denied*, 650 Pa. 653, 201 A.3d 157 (2019). As Appellant has now been convicted and sentenced for PIC, we may review his challenge as one attacking the sufficiency of the evidence to sustain his PIC conviction. *See id.* Accordingly, we decline the Commonwealth's invitation to find waiver under these circumstances.

Our standard of review upon a challenge to the sufficiency of the evidence is well settled:

> When reviewing a sufficiency claim, we construe "all the evidence admitted at trial in the light most favorable to the verdict winner[;]" the evidence is legally sufficient when it would "enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa.Super. 2017) (citation omitted). The Commonwealth may prove an offense by means of wholly circumstantial evidence, and the evidence presented "need not preclude every possibility of innocence." *Id.* (citation omitted). It is the job of the fact-finder to pass upon "the credibility of witnesses and the weight of the evidence produced," and the fact-finder "is free to believe all, part or none of the evidence." *Id.* (citation omitted).

*Commonwealth v. Reyes*, 350 A.3d 988, 997–98 (Pa.Super. 2025). "A challenge to the sufficiency of the evidence 'presents a pure question of law and, as such, our standard of review is *de novo*, and our scope of review is plenary.'" *Commonwealth v. Akeley*, 320 A.3d 106, 110 (Pa.Super. 2024) (quoting *Commonwealth v. Santiago*, 294 A.3d 482, 485 (Pa.Super.

2023)).

The Crimes Code defines PIC as follows:

**§ 907.  Possessing instruments of crime**

**(a) Criminal instruments generally.**--A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

\*     \*     \*

**"Instrument of crime."**  Any of the following:

(1) Anything specially made or specially adapted for criminal use.

(2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

18 Pa.C.S.A. § 907.  "To convict an individual of PIC, 'the Commonwealth has the burden of proving two elements: (1) possession of an object that is an instrument of crime and (2) intent to use the object for a criminal purpose.'" ***Commonwealth v. Moore***, 263 A.3d 1193, 1205 (Pa.Super. 2021), *appeal denied*, 673 Pa. 226, 278 A.3d 857 (2022) (quoting ***Commonwealth v. Brockington***, 230 A.3d 1209, 1213 (Pa.Super. 2020)).

In ***Commonwealth v. Vida***, 715 A.2d 1180 (Pa.Super. 1998), this Court considered whether a paint stick that was used to write graffiti on a public lamp pole fit within the statutory definition of an instrument of a crime. This Court concluded that the paint stick was used for a criminal purpose and possessed under circumstances not manifestly appropriate for lawful uses, and therefore it constituted an instrument of crime. ***Id.*** at 1183-84.  We

noted that, because the language of the PIC statute was "so clear on its face," we would not "look beyond it to interpret what [the] appellant insist[ed was] the 'true intent' of the legislature" in crafting the statutory definition for an instrument of crime. *Id.* at 1184.

Four years later, in *Williams, supra*, on which Appellant relies, this Court considered whether a defendant's use of a walkie-talkie to direct a police informant to a nearby house, before making a drug sale to the informant in that house, met the statutory definition of possessing an instrument of crime. This Court distinguished the case from our holding in *Vida* and held that "the mere use of an item to facilitate a crime does not transform the item into an instrument of crime for purposes of the PIC statute." *Williams, supra* at 215. This Court explained that in *Vida*, "the stick itself was the instrument whereby the criminal mischief (graffiti) was committed." *Id.* We further reasoned that:

> While recognizing that [the] appellant's walkie-talkie, under the circumstances, facilitated the illicit drugs sales, we distinguish its use from the paint stick in *Vida*, where the stick itself was the instrument whereby the criminal mischief (graffiti) was committed. Instantly, the walkie-talkie was used during the course of the drug sales, as a truck might be used in the course of a theft to transport stolen property, to help carry out the criminal offense. We hold that the mere use of an item to facilitate a crime does not transform the item into an instrument of crime for purposes of the PIC statute.
>
> While [the] appellant's use of the walkie-talkie facilitated the narcotics sales, we conclude that **the statute was not intended to include as instruments of crime equipment not used in the crime itself, but used only**

- 10 -

**to facilitate the crime**.

***Williams, supra*** at 215 (emphasis added).

Most recently, in ***Int. of K.M.M.B.***, No. 821 EDA 2020, 2021 WL 2447123 (Pa.Super. filed June 15, 2021) (unpublished memorandum),[3] this Court affirmed an appellant's adjudication of delinquency for PIC where the instrument of crime was a cell phone used to make terroristic threats. Notably, however, the appellant did not expressly challenge whether the cell phone was an instrument of crime. Instead, the appellant focused his argument on whether the Commonwealth had failed to prove the intent element for his adjudication of both terroristic threats and PIC. ***See id***. at *2, *4 (noting that appellant argued, "[i]n the absence of any criminal intent, it cannot be said that … appellant did, or intended to, employ his telephone criminally"). Without expressly analyzing whether the appellant's cell phone constituted an instrument of crime for purposes of the statute, this Court concluded: "In regard to his PIC adjudication, we have concluded, for the reasons set forth ***supra***, that the evidence proved [a]ppellant acted with reckless disregard in posting threatening messages on Snapchat. Thus, he possessed the requisite criminal intent for terroristic threats, and he utilized his telephone to further his commission of that offense. Consequently, the evidence supports his adjudication of PIC." ***See id.*** at *4.

_____

[3] ***See*** Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

- 11 -

Judge Kunselman penned a concurring memorandum, initially noting that the appellant's sufficiency challenge was undeveloped and, to the extent it was developed, the appellant had challenged only the scienter element of the offense of PIC, which the majority properly addressed. *Id.* at \*5. Judge Kunselman wrote separately, however, "to voice [her] reservations about the potentially far-reaching application of the PIC statute." *Id.* at \*5. She explained:

> I echo the concern articulated by Judge Beck, over twenty years ago, in her concurrence in [*Vida, supra*]. In *Vida*, the Majority concluded that a graffiti artist's paint stick constituted an instrument of the crime.
>
> However, the Concurrence worried that Section 907(d)(2) may be interpreted too broadly in certain instances. The Concurrence specifically questioned whether a telephone could become an instrument of a crime if it were used by an individual to harass another, or whether a megaphone could be an instrument of a crime if it were used to incite a riot. *Id.*[1]
>
> > [1] I find the Concurrence to be prescient. In the instant case, [the a]ppellant's Snapchat application possessed the same qualities as a harasser's telephone and a rioter's megaphone.
>
> To be clear – and as the Concurrence noted – it was the Legislature's intention to construct the PIC statute broadly when it long ago amended the statute. *See Vida*, 715 A.2d at 1184 (J. Beck, concurring) (citing a legislator's express desire to "get tough with violent criminals"). Prior to the amendment, the statute defined an instrument of a crime as "anything **commonly** used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it might have." *Vida*, at 1182 (Majority Opinion) (emphasis original). I defer to the wisdom of the Legislature when it deleted the word "commonly" from the from the statute. As the Majority in

- 12 -

*Vida* rightly observed, legislative intent controls when the courts are tasked with interpreting a statute. *Id.* (citing 1 Pa.C.S.A. § 1921(b)). Opining that there was little the Judiciary could do, Judge Beck concluded the Concurrence by encouraging the Legislature to reexamine the law.

My reservation has less to do with the Legislature's amendment of Section 907(d)(2), so much as it concerns whether the courts are accurately applying it. After the Legislature deleted the word "commonly," the PIC statute now covers: "Anything used for criminal purpose and possessed by the actor **under circumstances not manifestly appropriate for lawful uses it may have.**" 18 Pa.C.S.A. § 907(d)(2) (emphasis added). This emphasized clause survived to limit the first clause; the statute was not amended to cover any and all things.

I doubt the Legislature intended for the PIC statute to mean that whenever a person is charged with one crime, he or she will automatically be charged with a second. Indeed, our Court has attempted to explain that "instruments of a crime" cannot mean everything under the sun.

For example, in [***Williams, supra***], this Court reversed the conviction for PIC where the appellant used a walkie-talkie to coordinate drug sales. We held "that the mere use of an item to **facilitate** a crime does not transform the item into an instrument of crime for purposes of the PIC statute." *Id.* (emphasis added). Yet in my view, the courts have not uniformly applied the ***Williams*** rule, or otherwise articulated the limits of the PIC statute.

Here, [a]ppellant does not argue that his cellphone "merely facilitated" his crime, as opposed to being "crime equipment" used "in the crime itself." ***See id.*** Therefore, I join with the Majority's decision to affirm his conviction under the PIC statute.

***K.M.M.B., supra*** at *5-*6 (J. Kunselman, concurring) (emphasis in original;

some internal footnotes omitted).[4]

Instantly, we conclude that the cell phone used in this case was more akin to the paint stick used to commit the crime of criminal mischief in **Vida**, than it was to the walkie-talkie used only to facilitate drug sales in **Williams**. In **Vida**, the paint stick was the instrument of crime used to commit the criminal mischief by defacing public property with a marking device.[5] By contrast, in **Williams**, the walkie-talkie was used merely to "facilitate… the illicit drug sales," similar to how "a truck might be used in the course of a theft to transport stolen property, to help carry out the criminal offense." **Williams, supra** at 215.

Here, Appellant's cell phone was crime equipment used to post messages on social media applications to communicate the threats that

_____

[4] Both the trial court and the Commonwealth cite to **K.M.M.B.**, to support the proposition that Appellant's cell phone constituted an instrument of crime. As **K.M.M.B.** is an unpublished memorandum, it is not binding on us. Moreover, although we may rely on it for persuasive value (**see** Pa.R.A.P. 126(b)), we decline to do so with respect to this Court's statement therein that the appellant's cell phone constituted an instrument of crime based on his use of the Snapchat application to accomplish the crime of terroristic threats, where the appellant in that case made no such argument, and this Court did not expressly analyze such an issue. **See K.M.M.B., supra**.

[5] At the time, the statute criminalizing criminal mischief provided, in pertinent part, that "[a] person is guilty of criminal mischief if he: intentionally defaces or otherwise damages tangible public property or tangible property of another with an aerosol spray-paint can, broad-tipped indelible marker or similar marking device." 18 Pa.C.S.A. § 3304(a).

constituted the crimes of stalking and harassment.[6]  Because the cell phone was directly used in the crimes as the means of communicating to victim, its use satisfied key elements of both stalking and harassment.  *See* 18 Pa.C.S.A. §§ 2709(a)(4) and 2709.1(a)(2).  Under these circumstances, and in light of the legislature's broad definition of "instrument of crime," we conclude that Appellant used the cell phone criminally to communicate threats to the victim, in a manner not manifestly appropriate for its lawful use.  *See* 18 Pa.C.S.A. § 907.[7]  Accordingly, the evidence was sufficient to support Appellant's conviction for PIC.  Appellant's first issue is meritless.

In his second and third issues, Appellant claims the trial court abused its discretion when it failed to quash the duplicative charges of harassment

---

[6] Appellant was convicted of stalking under Section 2709.1(a)(2), which provides that a person is guilty of stalking when the person "engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person."  18 Pa.C.S.A. § 2709.1(a)(2). Appellant was convicted of harassment under Section 2709(a)(4), which provides that "[a] person commits the crime of harassment when, with the intent to harass, annoy or alarm another, the person: … (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures[.]"  18 Pa.C.S.A. § 2709(a)(4).

[7] Mindful of the concerns expressed by Judge Beck in *Vida*, and by Judge Kunselman in *K.M.M.B.*, we make clear that our holding today is limited to the facts of this case and should not be read to mean that one's use of a cell phone during the commission of a crime will necessarily support a conviction for PIC under all fact patterns.

and stalking.[8]   Appellant insists that he was accused of repeatedly communicating with the victim, and that the repeated communications together, including via both Facebook and Instagram, should form the basis for only one count of stalking and one count of harassment.   Appellant concludes the trial court erred when it did not quash the duplicative charges of harassment and stalking, and he is entitled to a new trial.  We disagree.

Preliminarily, the Commonwealth suggests that Appellant waived these issues.  The Commonwealth notes that Appellant raised several arguments asking the court to quash the charges, but he did not raise the specific claim that the additional counts of stalking and harassment charges were duplicative at the preliminary hearing, in the motion to quash, or at the hearing on the motion to quash.  The Commonwealth insists that Appellant cannot raise this new theory for relief for the first time on appeal.  We agree.

As this Court has explained:

> [I]t is the appellant's obligation to demonstrate which appellate issues were preserved for review.   Pa.R.A.P. 2117(c), 2119(e).  Second, during our review of a case, we rely only on facts and documents in the certified record.  This Court does not rely on items dehors the record, such as assertions in an appellate brief or a trial court opinion.  Moreover, the duty to ensure the certified record contains all the facts and documents necessary for our review lies with the appellant.  Thus, because our review necessitates a determination of whether issues were preserved, the

---

[8] Appellant was charged at Count 1 with stalking-Facebook communications, and at Count 2 with stalking-Instagram communications; he was charged at Count 11 with harassment-Facebook communications and at Count 12 with harassment-Instagram communications.

> appellant has the burden to demonstrate which part of the certified record reveals the preservation of the appellate issues.

***Commonwealth v. Rush***, 959 A.2d 945, 949 (Pa.Super. 2008) (some internal citations omitted).  ***See also*** Pa.R.A.P. 302(a), 2117(c), 2119(e).

Here, Appellant has not satisfied his burden to demonstrate where he preserved his arguments that the second charges of stalking and harassment should be quashed as duplicative.  In his Rule 1925(b) statement, Appellant asserts that he raised the issue of duplicative charges orally on January 19, 2023.  (***See*** Rule 1925(b) Statement, 5/22/25, at 4).  The record indicates that on January 19, 2023, the court conducted a hearing and appointed new counsel.  (***See*** Order, dated 1/20/23).  Nevertheless, the hearing was not transcribed and nothing in the aforementioned order mentions any oral motion to quash or dismiss charges as duplicative.[9]  Further, our review of the record does not reveal any instance where Appellant raised an issue concerning a challenge to the duplicative nature of the charges.  It was Appellant's responsibility to ensure all appellate claims were properly preserved on the record before us.  ***See Rush, supra***.  On this record, we agree with the Commonwealth that Appellant has waived the claims presented in his second and third issues on appeal.  ***See*** Pa.R.A.P. 302(a).

_____

[9] This Court reached out to the trial court prothonotary to ascertain if there were any additional transcripts from that date that were not originally included in the certified record and the prothonotary confirmed that the January 19, 2023 hearing had not been transcribed.

- 17 -

Moreover, even if we could consider the merits of these claims, Appellant would still not be entitled to relief. The Crimes Code defines harassment as follows:

**§ 2709. Harassment**

**(a) Offense defined.**--A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

\* \* \*

(4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures;

\* \* \*

18 Pa.C.S.A. § 2709(a)(4). As this Court has explained, "[a]n intent to harass may be inferred from the totality of the circumstances." ***Commonwealth v. Cox***, 72 A.3d 719, 721 (Pa.Super. 2013) (citation omitted).

The crime of stalking is defined as follows:

**§ 2709.1. Stalking**

**(a) Offense defined.**--A person commits the crime of stalking when the person either:

\* \* \*

(2) engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person.

18 Pa.C.S.A. § 2709.1(a)(2).

> "For purposes of the stalking statute, course of conduct is a 'pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct.'" ***Commonwealth v. Leach***, 729 A.2d 608, 611 (Pa.Super. 1999) (citation omitted). A "course of conduct by its very nature requires a showing of a repetitive pattern of behavior," which the Commonwealth establishes by proving at least two related but separate events. ***Id.*** at 611.

***Commonwealth v. Cruz***, 348 A.3d 1199, 1213 (Pa.Super. 2025), *appeal denied*, ___ Pa. ___, ___ A.3d. ___ (2026).

In ***Leach, supra***, the "appellant vandalized the victim's vehicle on nine separate occasions, flattening 13 tires and smashing 3 windshields." ***Leach, supra*** at 610. Ultimately, the appellant was convicted of nine separate counts of stalking, one for each of nine separate "occasions." On appeal, this Court explained:

> [W]e find stalking, as defined by the legislature, occurs with each act involved in an established course of conduct, and forms the basis for an independent charge. Each stalking, including the first, is a certifiable count, capable of sustaining a separate conviction and sentence. Each act, constituting the course of conduct leading to arrest and trial, is not merely cumulative evidence of stalking but a stalking in and of itself.

***Id.*** at 612 (footnote omitted). This Court continued:

> Each time a stalker commits an act, as part of an established course of conduct, under circumstances demonstrating an intent to place the victim in fear of bodily injury or to cause the victim substantial emotional distress, the fear and emotional distress increases. The repetitiveness of stalking acts is indicative of the defendant's unrelenting obsession with the victim and often reveals an escalation of violence. For these reasons, it is essential that each stalking act, which is included in an established course of conduct, be a separate offense, punishable with an individual sentence.

- 19 -

*Id.* at 612-13. The **Leach** Court compared this to "repetitive drug sales, which are a course of conduct which frequently results in a single prosecution on the multiple charges, each sale being a count in the complaint." **Id.** at 612.

Instantly, relying on this Court's decision in **Leach**, the trial court found that the charges were not duplicative because the evidence presented was sufficient to sustain both counts of stalking and both counts of harassment. As the trial court explained:

> Ms. Jung testified that Appellant first stalked and harassed her via Facebook in October of 2019. (N.T. Trial, 5/23/23, at 105). He kept messaging her after she told him to stop and then she blocked him on Facebook. (**Id.** at 126). In 2020, he began pursuing her on Facebook again; this time more aggressively and with pornographic images and videos. (**Id.** at 126-158). He then created multiple different Facebook profiles with different names just to communicate with Ms. Jung after she blocked him. Similarly with respect to Instagram, Appellant sent messages to Ms. Jung in the Fall of 2019 and then once she blocked him, he began again in 2020. (**Id.** at 158).
>
> Much like in the **Leach** case, the Appellant herein repeatedly stalked and harassed Ms. Jung on two different social media platforms, over the course of a year, thereby creating separate repetitive acts on each platform. Each time [Ms. Jung] opened her Facebook account she was victimized by Appellant and then when she opened her Instagram account she was once again subject to the Appellant's "unrelenting obsession" which caused fear and emotional distress. Therefore, these counts are not duplicative; they are properly charged as separate crimes.

(Trial Court Opinion, dated 6/30/25, at 6-7) (some citation formatting provided).

The record supports the trial court's conclusion. Appellant's convictions

- 20 -

for stalking related to communications on both Instagram and Facebook are based on Appellant's repeated use of each platform to cause Ms. Jung substantial emotional distress. *See* 18 Pa.C.S.A. § 2709.1(a)(2); *Cruz, supra*; *Leach, supra*. In addition, Appellant's separate convictions for harassment are supported by the multiple instances of his communicating to the victim "lewd, lascivious, threatening or obscene words, language, drawings or caricatures" via both Instagram and Facebook. *See* 18 Pa.C.S.A. § 2709(a)(4); *Cox, supra*. Appellant's repeated communications on Instagram and repeated communications on Facebook were sufficient to form the basis of his convictions of two counts of stalking, one related to Instagram contact and one related to Facebook contact, and two counts of harassment, one related to Instagram contact and one related to Facebook contact. *See Leach, supra*. Therefore, even if Appellant had properly preserved his second and third issues on appeal, they would merit no relief.

In Appellant's fourth and fifth issues,[10] Appellant argues that the trial court erred by failing to merge his separate convictions for stalking for sentencing purposes and failing to merge his separate convictions for harassment for sentencing purposes. Appellant complains the trial court

_____

[10] Although posed as separate questions, Appellant combines the two claims in the discussion portion of his brief. (*See* Appellant's Brief at 27-29).

should have reconsidered his sentence on this ground.[11]  We disagree.

Our standard of review of a claim that the trial court erred by failing to merge convictions for sentencing purposes is well settled: "A claim that convictions merge for sentencing is a question of law; therefore, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Kimmel***, 125 A.3d 1272, 1275 (Pa.Super. 2015) (*en banc*), *appeal denied*, 635 Pa. 761, 136 A.3d 980 (2016) (citation omitted).

As our Supreme Court has explained, "the merger doctrine is generally a rule of statutory construction designed to determine whether the legislature intended for the punishment of one offense to encompass that for another offense arising from the same criminal act or transaction." ***Commonwealth v. Davidson***, 595 Pa. 1, 32-33, 938 A.2d 198, 217 (2007) (citations and internal quotation marks omitted).  "Thus, a main objective in development of the merger doctrine is to prevent the punishment of a defendant more than once for one criminal act."  ***Id.*** at 33, 938 A.2d at 217 (citation omitted).  Indeed, "[t]he purpose of the merger doctrine is double jeopardy-based, *i.e.*, to safeguard against multiple punishments for the same act." ***Id.*** at 34, 938

_____

[11] As we have already explained, the trial court lacked jurisdiction to consider Appellant's *pro se* motion for reconsideration filed while his appeal was already pending.  ***See*** footnote 2, ***supra***.  Nevertheless, a claim that convictions should have merged for sentencing purposes implicates the legality of sentencing which can be raised for the first time on appeal.  Thus, we may consider the merits of this claim on appeal. ***See Commonwealth v. Cianci***, 130 A.3d 780, 782 (Pa.Super. 2015).

A.2d at 217 (citations omitted). "The test for sentencing merger is the same test utilized to decide whether more than one offense has been committed in the double jeopardy context." ***Id.*** at 34, 938 A.2d at 218. As this Court has explained:

> Merger in Pennsylvania is governed by section 9765 of the Sentencing Code, which provides as follows:
>
>> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.
>
> 42 Pa.C.S.[A.] § 9765 (emphasis added). "Accordingly, merger is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other." ***Commonwealth v. Raven***, 97 A.3d 1244, 1249 (Pa.Super. 2014), *appeal denied*, [629 Pa. 636], 105 A.3d 736 (2014).

***Kimmel, supra*** at 1276.

Instantly, Appellant's use of Facebook to stalk his victim (Count 1) and use of Instagram to stalk his victim (Count 2) arose from different criminal acts (namely the use of different social media sites to accomplish his stalking), for which the court was authorized to impose separate punishments. Similarly, Appellant's use of Facebook to harass his victim (Count 11) and use of Instagram to harass his victim (Count 12) are also separate criminal acts for which Appellant could be sentenced independently. ***See*** 42 Pa.C.S.A. § 9765; ***Davidson, supra***. ***See also Kimmel, supra***. Therefore, Appellant is

not entitled to relief on these claims.

In his next issue, Appellant argues that the trial court erred when it failed to merge Appellant's convictions for harassment with his convictions for stalking for sentencing purposes. Appellant insists that both harassment charges against Appellant stem from the same conduct that constitutes the stalking charges for which Appellant was convicted. We agree.

This Court has long recognized that "[h]arassment is a lesser-included offense of stalking, and the sentences must merge." *Cruz, supra* at 1215 (citing *Commonwealth v. Reese*, 725 A.2d 190, 192 (Pa.Super. 1999)). *See also Leach, supra* at 611 (stating: "the same conduct which amounts to harassment, 'if committed repeatedly with the intent to place the victim in fear of bodily injury or cause substantial emotional distress would rise to the level of stalking'") (citation omitted).

Here, Appellant was sentenced to 6 to 12 months of incarceration for each count of harassment, concurrent to each other and concurrent to the sentences imposed for the two counts of stalking. The Commonwealth agrees that Appellant's stalking and harassment convictions should have merged for sentencing purposes because they arose from the same conduct. (*See* Commonwealth's Brief at 13). Accordingly, we affirm the convictions of harassment but vacate the corresponding judgments of sentence. However, we note that the trial court imposed this sentence to run concurrently with the sentence for stalking and PIC. Accordingly, our disposition does not disturb

the overall sentencing scheme, and therefore remand is for resentencing is unnecessary. *See Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa.Super. 2006), *appeal denied*, 596 Pa. 745, 946 A.2d 687 (2008) (explaining remand is unnecessary where vacatur of one count does not affect overall sentencing scheme); *see also Cruz, supra* at 1215.

In his eighth issue, Appellant claims that the trial court erred when it instructed the jury because the court did not specifically ask the jury to consider whether the communications from Facebook and Instagram were different in either the jury instructions or on the verdict slip. Appellant alleges that without this direction, the jury could not properly consider each as a separate offense for purposes of deciding Appellant's guilt. Appellant concludes the court must award him a new trial on this ground. We disagree.

As a preliminary matter, we recognize generally that the "failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue." *Commonwealth v. Houck*, 102 A.3d 443, 451 (Pa.Super. 2014). Specifically, failure to object to language on the verdict sheet results in waiver of any challenge to the verdict sheet on appeal. *Commonwealth v. duPont*, 730 A.2d 970, 984-85 (Pa.Super. 1999), *cert. denied*, 530 U.S. 1231, 120 S.Ct. 2663, 147 L.Ed.2d 276 (2000) (holding appellant waived challenge to allegedly "misleading" verdict sheet where he did not object to verdict sheet prior to jury deliberations). Likewise, an appellant's failure to object to the jury

instructions provided to the jury constitutes waiver of this issue on appeal. ***Commonwealth v. Pressley***, 584 Pa. 624, 630, 887 A.2d 220, 224 (2005) (explaining that appellant must make specific objection to jury charge to preserve issue involving jury instruction).

Further, an appellant is responsible for providing a complete record for appeal including the notes of testimony necessary for a complete appellate record. ***See Commonwealth v. Lesko***, 609 Pa. 128, 237, 15 A.3d 345, 410 (2011) (explaining "the parties, who are in the best position to know what they actually need for appeal, are responsible to take affirmative actions to secure transcripts and other parts of the record"). As our Supreme Court has noted:

> [E]ven when notes of testimony are properly ordered, the absence of notes does not generate some instantaneous, meritorious claim for relief. Instead, if the initially missing notes matter, it becomes a circumstance the appellant or his counsel needs to respond to by, for example, ordering notes counsel failed to order earlier; or seeking an order of court to have ordered notes promptly transcribed, or otherwise made available; or, where notes cannot be secured, to take steps to have an equivalent picture of the proceeding generated. ***See*** Pa.R.A.P. 1911(a); Pa.R.A.P. 1923 (statement in the absence of transcript); Pa.R.A.P. 1924 (agreed upon statement of the record).

***Id.*** at 238, 15 A.3d at 410–11. Indeed, the burden falls on the appellant to create an adequate appellate record containing sufficient information concerning preservation of an issue, such as by providing statements in absence of transcript under Rule 1923, and the failure to do so results in waiver. ***Commonwealth v. Spone***, 305 A.3d 602, 608-09 (Pa.Super. 2023).

"[I]t is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." *Id.* (quoting **Commonwealth v. Baker**, 963 A.2d 495, 502 n.6 (Pa.Super. 2008)).

Here, nothing in the record indicates that Appellant objected to either the jury instructions or the verdict sheet. As the trial court noted, the charging conference itself was not transcribed; however, the court explained that during the conference counsel did not object to either the court's jury instructions or the verdict slip. Although Appellant suggests that he could have objected during the conference,[12] Appellant has not met his burden to prove that he raised the issue before the trial court. **See Spone, supra**. Consequently, Appellant's eighth issue is waived.

In his ninth issue, Appellant argues that the trial court erred when it denied his motion to quash the criminal information, arguing that during the preliminary hearing, the Commonwealth relied exclusively on hearsay to authenticate the records that were used to establish a *prima facie* case against him. Appellant contends that pursuant to **Commonwealth v. McClelland**,

---

[12] Appellate counsel did not serve as trial counsel and therefore was not present during the charging conference. Appellant had absconded and was not present for the second day of trial when the court issued jury instructions and approved the verdict sheet.

660 Pa. 81, 233 A.3d 717 (2020),[13] the Commonwealth cannot rely solely on hearsay at the preliminary hearing. Appellant concludes that the charges against him should have been quashed or dismissed on this ground. We disagree.

It is well settled that any defect that occurs at a preliminary hearing is subsequently cured after a defendant proceeds to trial and is found guilty. **Commonwealth v. Tyler**, 587 A.2d 326, 328 (Pa.Super. 1991) (holding: "Once [an] appellant has gone to trial and been found guilty of the crime, any defect in the preliminary hearing is rendered immaterial"). This Court has applied **Tyler**'s general rule to a **McClelland** claim, and explained that "the Supreme Court did not inten[d] to extend **McClelland**'s holding to cases ... where the complained-of defect in the preliminary hearing is subsequently cured at trial." **Commonwealth v. Rivera**, 255 A.3d 497, 502 (Pa.Super. 2021), *reversed on other grounds*, ___ Pa. ___, 296 A.3d 1141 (2023).

Here, as Appellant concedes, "the issue as to the authenticity of the items received from Facebook and Instagram was not raised at the time of trial, and was solely raised in the Motion to Quash." (Appellant's Brief at 31). Although Appellant claims the Commonwealth relied on hearsay at the preliminary hearing because the testifying trooper did not have first-hand

_____

[13] In **McClelland**, our Supreme Court held that hearsay evidence alone is insufficient to establish a *prima facie* case at a preliminary hearing. **McClelland, supra** at 87, 233 A.3d at 721.

knowledge of the communications, we note that the victim later testified at the hearing on the motion to quash and at trial as to the communications that she received from Appellant. In any event, any defect at Appellant's preliminary hearing was cured at trial and rendered immaterial by his later convictions. *See Rivera, supra*; *Tyler, supra*. Appellant's ninth issue merits no relief.

Finally, we observe that although he did not include it in his statement of questions presented, Appellant adds a tenth issue in his brief, raising a challenge to the admissibility of evidence presented at trial. Appellant argues that the trial court took judicial notice of a prior in court proceeding wherein Appellant referenced and took ownership of a letter[14] that he had sent to the trial court's chambers.[15] Appellant does not argue that the court erred in taking judicial notice of the earlier proceeding, but he insists that the state trooper who ultimately introduced the letter, was an inappropriate party to do

---

[14] In the letter, Appellant stated the following:

> I made a few fake Facebook and Instagram accounts. I texted her some sexually explicit messages. I texted her some sexually explicit anime images. I texted her some sexually explicit videos because when I was 15 years old, I had a dream of a girl that she resembles the most and I became infatuated.

(N.T. Trial, 5/24/23, at 70).

[15] Appellant explains that rather than playing a recording from the prior court proceeding, trial counsel stipulated that the recording would have shown Appellant stating that he wrote the judge a letter.

so because he did not have knowledge of the letter. Appellant concludes this Court must remand for a new trial on this ground. We disagree.

Initially, we note that our Rules of Appellate Procedure require compliance with multiple briefing requirements, including the requirement that an appellant present all issues in the statement of questions. The "Rules make abundantly clear that appellate courts will not consider the merits of an issue unless it is stated in the 'Statement of Questions Involved' or 'is fairly suggested thereby.'" ***Commonwealth v. Reid***, 668 Pa. 358, 378, 259 A.3d 395, 407 (2021). ***See also*** Pa.R.A.P. 2116(a) (stating: "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby). Because Appellant failed to include this issue in his statement of questions presented, it is waived on appeal. ***See id.***

Moreover, even if Appellant had included this issue in his statement of questions, the argument portion of his brief does not comply with the Rules of Appellate Procedure because Appellant does not cite to any pertinent authority in support of his claim. "Rule 2119 of Pennsylvania Appellate Procedure requires that an appellant's brief identify the issue or issues to be reviewed by this Court, followed by citations to legal authority supporting the claim." ***Commonwealth v. Midgley***, 289 A.3d 1111, 1118 (Pa.Super. 2023) (citation omitted). ***See also*** Pa.R.A.P. 2119(a) (discussing requirements of argument section of brief). "Where the appellant fails to develop an issue or cite legal authority, we will find waiver of that issue." ***Midgley, supra*** (citation

omitted).

Here, the only citations to any legal authority in Appellant's argument for this issue pertain to the judicial notice of adjudicative facts set forth at 225 Pa. Code Rule 201. As previously mentioned, however, Appellant does not argue that the court erred in taking judicial notice of the prior proceeding. Rather, he claims that the court erred when it permitted the trooper to introduce the testimony, a contention which he does not support with citation to any relevant authority. (*See* Appellant's Brief at 33-34). Thus, Appellant's claim is waived for this reason as well. *See Midgley, supra*.

Judgment of sentence vacated for counts of harassment only and affirmed in all other respects. Jurisdiction is relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/29/2026